**Hearing Date: January 20, 2010**
**Time: 3:00 PM**

Law Office of Arthur Laske
65-06 Grand Avenue
Maspeth, New York 11378
(718)326-3500
Arthur M. Laske,Esq.(AML#6534)
Attorney for Movant
CHESTNUT REALTY GROUP, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
In re:

3301 Atlantic Avenue, LLC,         Case No. 09-40189

           Debtor.        Chapter 11

----------------------------------x
In re:

Chloe Foods Corp.,           Case No. 08-48650
d/b/a Chloe Foods Manufacturing,

           Debtor.        Chapter 11

----------------------------------x

**NOTICE OF MOTION OF MOTION OF CHESTNUT REALTY GROUP LLC FOR AN ORDER (I) COMPELLING DEBTOR TO COMPLY WITH THE TERMS OF THE CONTRACT OF SALE AND THE ORDER OF THE HONORABLE CARLA E. CRAIG; (II) COMPELLING EM-ESS ACQUISTION, LLC TO COMPLY WITH THE TERMS OF THE ASSET PURCHASE AGREEMENT, LEASE AGREEMENT AND THE ORDER OF THE HONORABLE CARLA E. CRAIG; COMPELLING THE DEBTOR AND EM-ESS ACQUISITION, LLC TO DELIVER THE PREMISES KNOWN AS AND LOCATED AT 248 CHESTNUT STREET, BROOKLYN, NEW YORK AND 99 DINSMORE PLACE, BROOKLYN, NEW YORK TO CHESTNUT REALTY GROUP, LLC <u>VACANT AND FREE OF ALL INTERESTS</u>**

**PLEASE TAKE NOTICE** that upon the annexed motion dated

December 8, 2009 (the "Motion") of CHESTNUT REALTY GROUP
LLC("Chestnut Realty),purchaser of certain real property
from Debtor 3301 Atlantic Avenue, by their attorneys, The
Law Office of Arthur Laske, will move this court before the
Honorable Carla E. Craig, Chief United States Bankruptcy
Judge, at the United States Bankruptcy Court of the Eastern
District of New York, 271 Cadman Plaza East, Brooklyn, New
York 11201, Courtroom 3529, On January 20, 2010 at 3:00
P.M. (the "Hearing")or as soon thereafter as counsel can be
heard, for an order (i) compelling the Debtor 3301 Atlantic
Avenue to comply with the terms of the Contract of Sale and
the Order of the Honorable Carla E. Craig; (ii) compelling
EM-ESS Acquisition, LLC ("EM-ESS") to comply with the terms
of the Asset Purchase Agreement and Lease Agreement and the
Order of the Honorable Carla E. Craig; (iii) compelling the
Debtor and EM-ESS to deliver the properties known as and
located at 248 Chestnut Street, Brooklyn New York (Block:
4141 Lot:33) and 99 Dinsmore Place, Brooklyn, New York
(Block: 4141 Lot:39), to Chestnut Realty vacant and free of
all interests.

**PLEASE TAKE FURTHER NOTICE** that any responses or
objections to the Motion must be in writing, shall conform
to the Federal Bankruptcy Rules and the local Rules of the

Judge Craig's chambers, no later than January 15, 2010.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, must also be served so that a hard copy of the objection is received on or before the Objection Deadline, by ARTHUR LASKE, Eeq., 65-06 Grand Avenue, Maspeth, New York 11378.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be adjourned from time to time without any additional or further notice.

Dated: Maspeth, New York
      December 8, 2009

                                ARTHUR LASKE, Esq.
                                Attorney for Chestnut Realty
                                65-06 Grand Avenue
                                Maspeth, New York 11378
                                (718)326-3500

3

To:      Sanford P. Rosen & Associates
         Attorneys for 3301 Atlantic Avenue, LLC
         747 Third Avenue
         New York, New York 10017
         (212) 223-1100

         Davidoff Malito & Hutcher LLP
         Attorneys for Chloe Foods Corp.
         605 Third Avenue
         New York, New York 10158
         (646) 428-3237

         Goldberg Weprin, Finkel Goldstein LLP
         Attorneys for EM-ESS Acquisition LLC
         1501 Broadway, 22nd Floor
         New York, New York 10036
         (212) 221-5700

         McCarter & English, LLP
         Attorneys for Wells Fargo Bank
         245 Park Avenue, 27th Floor
         New York, New York, 10167
         (212) 609-6800

         Diana G. Adams
         United States Trustee
         271 Cadman Plaza East, Suite 4529
         Brooklyn, New York 11201
         (718) 422-4960

Hearing Date: January 20, 2010
Time: 3:00 P.M.

Law Office of Arthur Laske
65-06 Grand Avenue
Maspeth, New York 11378
(718)326-3500
Arthur M. Laske,Esq.(AML#6534)
Attorney for Movant
CHESTNUT REALTY GROUP, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x
In re:

3301 Atlantic Avenue, LLC,                    Case No. 09-40189

                    Debtor.
                                              Chapter 11

--------------------------------x
In re:

Chloe Foods Corp.,                            Case No. 08-48650
 d/b/a Chloe Foods Manufacturing,

                    Debtor.
                                              Chapter 11

--------------------------------x

## MOTION OF CHESTNUT REALTY GROUP LLC FOR AN ORDER(I)COMPELLING DEBTOR TO COMPLY WITH THE TERMS OF THE CONTRACT OF SALE AND THE ORDER OF THE HONORABLE CARLA E. CRAIG;(II)COMPELLING EM-ESS ACQUISTION,LLC TO COMPLY WITH THE TERMS OF THE ASSET PURCHASE AGREEMENT,LEASE AGREEMENT AND THE ORDER OF THE HONORABLE CARLA E. CRAIG; COMPELLING THE DEBTOR AND EM-ESS ACQUISITION, LLC TO DELIVER THE PREMISES KNOWN AS AND LOCATED AT 248 CHESTNUT STREET, BROOKLYN, NEW YORK AND 99 DINSMORE PLACE,BROOKLYN,N.Y.TO CHESTNUT REALTY GROUP,LLC VACANT AND FREE OF ALL INTERESTS

TO: JUDGE CARLA E. CRAIG
    UNITED STATES CHIEF BANKRUPTCY JUDGE
    UNITED STATES BANKRUPTCY COURT
    EASTERN DISTRICT OF NEW YORK AT BROOKLYN

CHESTNUT REALTY GROUP, LLC ("Chestnut Realty"), the purchaser of certain lots from the above-captioned debtor 3301 Atlantic Avenue by its attorneys, Law Office of Arthur Laske moves for an Order (i) compelling the Debtor, 3301 Atlantic Avenue, to comply with the terms of the Contract of Sale and the Order of the Honorable Carla E. Craig dated October 15, 2009; (ii) compelling EM-ESS Acquisition, LLC ("EM-ESS") to comply with the terms of the Asset Purchase Agreement and Lease Agreement and the Order of the Honorable Carla E. Craig; (iii) compelling the Debtor, 3301 Atlantic Avenue, and EM-ESS to deliver the properties known as and located at 248 Chestnut Street, Brooklyn New York (Block: 4141 Lot:33) and 99 Dinsmore Place, Brooklyn, New York (Block: 4141 Lot:39) to Chestnut Realty vacant and free of all interests and respectfully represents as follows:

## PRELIMINARY STATEMENTS

1. On October 16, 2009, pursuant to a Contract of Sale dated May 14, 2009 (the "Contract") and an Order of this Court dated July 24, 2009, and a Re-Affirming Order of this Court dated October 15, 2009 (the "Lots Sale Approval Order"), Chestnut Realty purchased from the Debtor, 3301

2

Atlantic Avenue, certain real property from the Debtor 3301 Atlantic Avenue, including property known as and located at 248 Chestnut Street, Brooklyn New York (Block: 4141 Lot:33) and 99 Dinsmore Place, Brooklyn, New York (Block: 4141 Lot:39) (the "Chestnut Lots").Pursuant to the Lots Sale Approval Order Chestnut Realty was to receive the property including the Chestnut Lots "free and clear of any interests."  However, as of the date hereof, the Debtor 3301 Atlantic Avenue, has not delivered the Premises free and clear of all interests as the premises is currently occupied by EM-ESS.  In a related bankruptcy case in front of this Court and the Honorable Carla E. Craig (In re Chloe Foods Corp, d/b/a Chloe Foods Manufacturing, Case No. 108-48650-CEC), EM-ESS pursuant to a Lease Agreement and an Order of the Court dated May 22, 2009 (the "Lease Order") purchased substantially all of the assets of Chloe Foods and leased certain property from the Debtor 3301 Atlantic Avenue.  The Lease Order states in relevant part that EM-ESS "enter into a lease with 3301 Atlantic Avenue LLC ("3301")...covering the entire operating plant and parking lot across the street, commonly known as 3301 Atlantic Avenue, Brooklyn, NY (*excluding* 3301's property known as Block 4141 lots 1, 33, 35 and 39 ...) pursuant to a lease

3

dated May 21, 2009." At the time of the closing, EM-ESS was occupying the Chestnut Lots as a part of their parking lot. As of the date hereof, contrary to its lease, the Orders of this Court and numerous written and oral requests by Chestnut Realty, EM-ESS has not vacated the Chestnut Lots. Accordingly, Chestnut Realty respectfully requests an Order of this Court (i) compelling the Debtor, 3301 Atlantic Avenue, to comply with the terms of the Contract of Sale and the Order of the Honorable Carla E. Craig; (ii) compelling EM-ESS Acquisition, LLC ("EM-ESS") to comply with the terms of the Asset Purchase Agreement and Lease Agreement and the Order of the Honorable Carla E. Craig; (iii) compelling the Debtor 3301 Atlantic Avenue, and EM-ESS to deliver the properties known as and located at 248 Chestnut Street, Brooklyn New York (Block: 4141 Lot:33) and 99 Dinsmore Place, Brooklyn, New York (Block: 4141 Lot:39) to Chestnut Realty vacant and free of all interests.

### JURSIDICTION AND VENUE

2.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 & 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(N).  Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

4

## BACKGROUND

3.    On January 14, 2009, the Debtor, 3301 Atlantic Avenue, commenced in this Court a voluntary case under Chapter 11 of the Bankruptcy Code.

4.    At the time of its bankruptcy filing the Debtor 3301 Atlantic Avenue, owned certain real property located at 3301 Atlantic Avenue, Brooklyn, New York (the "Chloe Foods Plant") together with several other lots identified as Section 13, Block 4142, Lot 1, and Block 4141, lots 1, 30, 33, 35 and 39 (the "3301 Lots").

5.    On December 19, 2008, Chloe Foods Corp., ("Chloe Foods") an affiliate of the Debtor, 3301 Atlantic Avenue, filed its own petition for relief under Chapter 11 of the Bankruptcy Code. The Chloe Foods case (case no. 1-08-48650 (CEC))has also been assigned to Judge Craig.

6.    In the course of the Chloe Foods proceedings and pursuant to the Lease Order, Chloe Foods sold substantially all of its assets to EM-ESS and the Debtor 3301 Atlantic Avenue, entered into a new lease with EM-ESS in May, 2009 pursuant to which EM-ESS became the Debtor's tenant of the Chloe Foods Plant and one of the 3301 Lots; the lot identified as Block 4141, Lot 30 ("Lot 30").    The Lease Order states in relevant part that EM-ESS "enter

5

into a lease with 3301 Atlantic Avenue, LLC ("3301")...covering the entire operating plant and parking lot across the street, commonly known as 3301 Atlantic Avenue, Brooklyn, NY (excluding 3301's property known as Block 4141 lots 1, 33, 35 and 39) pursuant to a lease dated May 21, 2009." Accordingly, as per the terms of the Lease Order, EM-ESS has no legal right to Occupy the Chestnut Lots. A copy of the Lease Order and the EM-ESS Lease with the Debtor are annexed hereto as Exhibit 1.

7.    The Debtor, 3301 Atlantic Avenue, entered into a Contract of Sale dated May 14, 2009 with a limited liability company to be formed by Joseph Sgro and Agostino Vona (the "Proposed  Purchaser"), as purchaser, whereby the Proposed Purchaser agreed to purchase the 3301 Lots, excluding Lot 30, for $7.3 million.    A copy of the Contract of Sale is annexed hereto as Exhibit 2.

8.    The Debtor, 3301 Atlantic Avenue, filed a motion with this Court dated May 11, 2009 (the "Lots Sale Motion"), seeking authorization and approval for the sale of the Lots, free and clear of any claim, interest, mortgage, pledge, security interest, right of first refusal, option, encumbrance, lien or charge of any kind (collectively, "Interests"). This Court, by the Lots Sale

Approval Order, approved the sale of the 3301 Lots, excluding Lot 30, free and clear of Interests from the Debtor, 3301 Atlantic Avenue, to the Proposed Purchaser. A copy of the Lots Sale Approval Order is annexed hereto as Exhibit 3.

9.    On October 16, 2009, the Debtor, 3301 Atlantic Avenue, and Chestnut Realty Group LLC, Pursuit Realty Group, LLC and Richmond Realty Group, LLC (the "Purchasers"), conducted a closing in which the Purchasers purchased the 3301 lots, excluding Lot 30, from the debtor for $7.3 million Dollars.    As part of such purchase, Chestnut Realty purchased the Chestnut Lots. A copy of the executed Bargain and Sale Deed transferring the Chestnut Lots delivered to Chestnut Realty at the closing is annexed hereto as Exhibit 4.

10.    On the Date of Closing, Chestnut Realty attempted to gain possession of the Chestnut Lots in accordance with the Lots Sale Approval Order but were unable to do so as EM-ESS refused to vacate the portion of the Chestnut Lots they were occupying and using as a parking lot. Mr. Marvin Sussman, representative of EM-ESS, advised Chestnut Realty that EM-ESS was leasing a portion of the Chestnut Lots form the Debtor. Chestnut Realty

7

advised EM-ESS that, pursuant to the Orders of this Court, EM-ESS had no right to occupy the Chestnut Lots. Chestnut Realty advised EM-ESS of the transfer of the Chestnut Lots to Chestnut Realty and requested that EM-ESS vacate the Chestnut Lots in accordance with this Court's Orders. Thereafter, on November 10, 2009, following EM-ESS' continued refusal to comply with this Court's Orders, real estate counsel for Chestnut Realty, Joseph S. Vona, Esq., had certain correspondence hand delivered to EM-ESS further advising EM-ESS that pursuant to the Lease Order they had no legal right to occupy the Chestnut Lots and requested that EM-ESS immediately vacate the Chestnut Lots. A copy of the correspondence hand delivered to EM-ESS is annexed hereto as Exhibit 5. As of the date hereof, EM-ESS has still not vacated the Chestnut Lots and the debtor has still failed to deliver possession of same vacant and free and clear of all interests in accordance with the Contract of Sale and the Lots Sale Approval Order.

## RELIEF REQUESTED

I. Debtor should be compelled to comply with the Lots Sale Approval Order.

11. To date, the Debtor, 3301 Atlantic Avenue, has

failed to deliver the Chestnut Lots free and clear of all interests as directed in the Lots Sale Approval Order. Thus, as the sale of the 3301 Lots, excluding Lot 30, was ordered by this Honorable Court, the debtor, 3301 Atlantic Avenue, has failed to comply with the Lots Sale Approval Order and Chestnut Realty seeks an Order compelling the Debtor, 3301 Atlantic Avenue, to deliver the Chestnut Lots free and clear of all interests, including any interest of EM-ESS.

II.   EM-ESS should be compelled to comply with the Chloe Sales Order and vacate the Chestnut Lots.

12.   To date, EM-ESS, has failed to comply with the Chloe Sales Order and has been occupying the Chestnut Lots contrary to the Chloe Sales Order.   Thus, as of the sale of substantially all of the Chloe Food assets and the new lease agreement between the Debtor and EM-ESS was ordered by this Honorable Court, EM-ESS has failed to comply with the Chloe Sales Order and the Lease Agreement and Chestnut Realty seeks an Order compelling EM-ESS to immediately vacate the Chestnut Lots.

III.   Chestnut Realty should be paid the sum of $7,500 from EM-ESS as and for an award of counsel fees for the necessity of filing the instant application and for such

9

other additional fees that may be incurred with respect to the enforcement of this application.

13.    Unfortunately, Chestnut Realty was forced to file this unnecessary application, as a result of EM-ESS blatant disregard for this Court's orders and EM-ESS' refusal to comply with the reasonable and appropriate written and oral requests of Chestnut Realty to vacate the Chestnut Lots. There has been no legitimate legal reason given by EM-ESS as to why the purchased lots have not been turned over to the possession of Chestnut Realty to date. Further, there is no reason why Chestnut Realty should not be presently benefiting from the business use of these purchased lots two months after the closing. Chestnut Realty exhausted every effort to avoid wasting this courts time as well as the time and expense of its counsel to obtain possession of the Chestnut Lots in accordance with the orders of this court. EM-ESS has flagrantly disobeyed the orders of this Honorable Court and as a result should be held to pay the legal expenses of Chestnut Realty related to this application.

**NOTICE**

14.    Notice of this Motion will be provided to (i) counsel to Debtor, 3301 Atlantic Avenue, LLC, (ii) counsel

to Debtor, Chloe Foods Corp., (iii) counsel to EM-ESS (iv) counsel to Wells Fargo Bank, N.A. as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial mortgage Pass-Through certificates, series 2005-C22 and (v) the Office of the United States Trustee. Chestnut Realty submits that no other or further notice is warranted and that the notice provided is sufficient.

## CONCLUSION

WHEREFORE, Chestnut Realty respectfully requests that this Court enter an order (i) compelling Debtor 3301 Atlantic Avenue to comply with the terms of the Contract of Sale and the Order of the Honorable Carla E. Craig; (ii) compelling EM-ESS Acquisition, LLC ("EM-ESS") to comply with the terms of the Asset Purchase Agreement and Lease Agreement and the Order of the Honorable Carla E. Craig; (iii) compelling the Debtor and EM-ESS to deliver the properties known as and located at 248 Chestnut Street, Brooklyn New York (Block: 4141 Lot:33) and 99 Dinsmore Place, Brooklyn, New York (Block: 4141 Lot:39) to Chestnut Realty vacant and free of all interests; and (iv) granting attorney fees to Chestnut Realty from EM-ESS in the amount of $7,500 and (v) granting such other and

11

further relief as the court deems appropriate.

Dated: Maspeth, New York
       December 8, 2009

Arthur M. Laske, Esq.

Law Office of Arthur Laske
Attorneys for Chestnut Realty
Group, LLC
65-06 Grand Avenue
Maspeth, New York 11378
(718) 326-3500

**Exhibit 1**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

In re                                    Chapter 11

CHLOE FOODS CORP.,                       Case No. 108-48650-CEC
d/b/a Chloe Foods Manufacturing

          Debtor.

------------------------------------x

### ORDER CONFIRMING SALE BY DEBTOR CHLOE FOODS CORP., OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, TO EM-ESS ACQUISITION LLC AND RELATED RELIEF

CHLOE FOODS CORP., debtor and debtor in possession (the

"Debtor"), by its attorneys, Davidoff Malito & Hutcher LLP,

having moved this Court by application dated April 30, 2009 (the

"Motion"), pursuant to sections 363(b), 363(f), 363(m) and 365 of

title 11 of the United States Code, 11 U.S.C. §101, et seq. (the

"Bankruptcy Code") and Rules 2002(a)(2), 6004 and 6006 of the

Bankruptcy Rules to sell substantially all of the assets of the

Debtor free and clear of all interests, liens, claims and

encumbrances against such property, to EM-ESS Acquisition LLC or

any higher and better offeror (the "Purchaser") pursuant to that

certain Asset Purchase Agreement as amended (the "APA"), attached

to the Motion, and to assume and assign certain executory

contracts; and it appearing that the Purchaser will, subject to

00390360.3

the entry of this Order, enter in to a new lease with 3301

Atlantic Avenue LLC ("3301"), with the approval of 3301's

mortgagee, Wells Fargo Bank, NA, as Trustee for the Registered

Holders of Wachovia Bank Commercial Trust ("Wells Fargo"),

covering the entire operating plant and perking lot across the

street, commonly known as 3301 Atlantic Avenue, Brooklyn, NY

(excluding 3301's property known as Section 13, Block 4142, Lot

1, and Block 4141, Lots 1, 33, 35 and 39, including any buildings

and improvements, appurtenances, fixtures, equipment and any

other personal property appurtenant to any buildings thereto),

pursuant to lease dated May 21, 2009 (the "New Brooklyn Lease"),

(a copy of which is annexed hereto as Exhibit "A"), under which,

inter alia, Purchaser shall lease the aforesaid premises on a

triple-net basis, subject to the following schedule of base rent:

(a) no base rent shall be due in year one; (b) base rent shall be

$125,000.00 per month in years two and three; and (c) base rent

shall be $130,000 per month in years four and five; provided,

however that Purchaser shall pay in each year of the term of the

New Brooklyn Lease, as and when due, all additional rent, as such

term is defined in the prior (now rejected) lease between 3301,

as landlord, and the Debtor, as tenant (the "Prior Lease"),

including, without limitation, payments in respect of all repairs

during the entire term of the New Brooklyn Lease; and provided,

further, that Marvin Sussman shall execute and deliver to 3301,

2

in a form reasonably acceptable to 3301 and Wells Fargo, a

personal guaranty of payment (not collection) of rent in the

amount of $1,080,000.00 in the event of a default under the New

Brooklyn Lease; and provided, further, that Purchaser shall pay

to Wells Fargo, for the account of 3301, the sum of $300,000.00

on account of the Debtor's obligation to pay postpetition rent

under the Prior Lease, as an adjustment from sale proceeds,

which payment shall be deemed to be in full satisfaction of the

Debtor's pre and postpetition obligations under the Prior Lease

or use and occupation; and it appearing that the Debtor will

reject all other executory contracts except for those identified

on the schedule annexed hereto as Exhibit "B"; and the Court

having scheduled a hearing to conduct said auction on May 21,

2009 (the "Auction Hearing"); and due notice of the Motion and

the Auction Hearing having been given; and all objections to the

relief sought in the Motion having either been resolved pursuant

to various agreements made on the record, including agreements

between the Purchaser and Local 807 IBT and Local 348 United

Food and Commercial Workers, or otherwise overruled; and the

Purchaser having made the highest bid at the Auction Hearing;

and it further appearing that the PACA trust creditors of Debtor,

Bonell Produce, Inc., d/b/a Dublin Produce Co. ("Bonell"), Paris

Foods, Corporation ("Paris"), Steve Malatesta Imports

("Malatesta") and Farm Fresh, Inc.("Farm Fresh"), have

3

independently agreed to contemporaneously transfer all of their

respective rights, title and interests in the PACA trust assets

of the Debtor and to release the Debtor and Purchaser of all sums

due to them as part of the bid amount pursuant to this Court's

prior Order for the sum of $1,158,000.00 for Bonell, $452,852.00

for Farm Fresh, $27,398.00 for Paris and $84,028.35 for

Malatesta, to be paid by the Purchaser directly to them, except

for Malatesta, as to whom the funds to pay its claim shall be

escrowed pending resolution of Malatesta's PACA rights, if any;

and there being no higher and/or better offers made; and after

due consideration, and for good and sufficient cause appearing

therefore; it being

**FOUND**, that the Purchaser constitutes a good faith purchaser

within the meaning of section 363(m) of the Bankruptcy Code; it

is

**ORDERED**, that the bidding procedures employed are hereby

confirmed, ratified and approved; and it is further

**ORDERED**, that the APA is approved; and it is further

**ORDERED**, that the Debtor be, and it hereby is, authorized

and directed to sell all of the assets enumerated in the APA to

the Purchaser for $3,000,000.00 as adjusted (the "Purchase

Price"), less the sums paid directly to the PACA trust

beneficiaries or escrowed for Malatesta, free and clear of all

interests, claims, liens, taxes and other encumbrances pursuant

4

00390360.3

to 11 U.S.C. § 363(b) and (f), with such interests, claims, liens, taxes and encumbrances to attach to the net sale proceeds in the same order and priority as they existed prior to the sale of the assets being sold, after satisfaction of the PACA beneficiaries; and it is further

ORDERED, that upon the Purchaser's payment, at the direction of 3301, of the sum of $300,000.00 to Wells Fargo on account of the Debtor's obligation to pay postpetition rent under the Prior Lease, such payment shall be deemed to be in full satisfaction of the Debtor's pre and postpetition obligations and/or use and occupation under the Prior Lease, and in further consideration of such payment Wells Fargo shall deliver a duly executed attornment and nondisturbance and subordination agreement in favor of the Purchaser; and it is further

ORDERED, that the executory contracts itemized on Exhibit "B" annexed hereto are hereby assumed and assigned to Purchaser with the Purchaser to effectuate the cure of all cure amounts subject to future reimbursement under the APA; and it is further

ORDERED, that all other executory contracts and unexpired leases are hereby rejected under section 365 of the Bankruptcy Code; and it is further

ORDERED, that the Debtor, by Annette Apergis, is authorized to execute, acknowledge and deliver all such other documents,

5

00390360.3

bills of sale, assignments, conveyances and other instruments of transfer and to take any and all other action as may be reasonably necessary to perform and close under the APA; and it is further

**ORDERED**, that the Purchaser is entitled to the protections of 11 U.S.C. § 363(m) and this Order shall be immediately effective and the 10 day stay under Bankruptcy Rules 6004(h) and 6006(d) are dispensed with and waived; and it is further

**ORDERED**, that as additional consideration, starting when the Purchaser reaches annual sales of $50,000,000.00, or more, then the general unsecured creditors are entitled to receive $10,000.00 per month for a period of 48 months, for a total sum of $480,000.00, which funds Purchaser shall pay into a fund for the benefit of general unsecured creditors to be held in escrow and distributed by Platzer Swergold, etc., as counsel for the benefit of the general unsecured creditors.

Dated:    Brooklyn, New York
          May 22, 2009

                              **s/Carla E. Craig**
                              Hon. Carla E. Craig
                              Chief United States Bankruptcy Judge

6

================================================================

, Superceeding and Replacement Lease For
Lease Dated September 1, 2007

**LEASE**

dated ~~MAY~~ , 2009

between

3301 ATLANTIC AVENUE, LLC

as Lessor

and

EM-ESS ACQUISITION LLC
xxxxxxxxxxxxxxxxxxxxxxxxxx

as Lessee

Affecting premises commonly known as Block 4143 Lot 1, also
known as 3301 Atlantic Avenue, Brooklyn, NY

================================================================

1 -- Demised Premises and Lease Term
2 -- Rent
3 -- No Counterclaim or Abatement
4 -- Use of Demised Premises
5 -- Condition of Demised Premises
6 -- Maintenance and Repair
7 -- Alterations and Additions
8 -- Impositions
9 -- Compliance With Requirements
10 -- Liens
11 -- Permitted Contests
12 -- Utility Services
13 -- Insurance
14 -- Indemnification By Lessee
15 -- Damage or Destruction
16 -- Taking of the Demised Premises
17 -- Quiet Enjoyment
18 -- Right to Cure Lessee's Default
19 -- Events of Default and Termination
20 -- Repossession
21 -- Reletting
22 -- Assignment of Subrents
23 -- Lessee's Equipment
24 -- Security Deposit
25 -- Survival of Obligations;  Damages
26 -- Waivers
27 -- Lessor's Remedies Cumulative
28 -- Estoppel Certificates
29 -- Assignment and Subletting
30 -- Subordination and Attornment
31 -- Entry by Lessor
32 -- Conveyance by Lessor
33 -- No Merger of Title
34 -- Acceptance of Surrender
35 -- End of Lease Term
36 -- Brokerage
37 -- Definitions
38 - Notices
 39—Option Period
40 -- Miscellaneous

Exhibit A -- Description of Land

## LEASE

LEASE, dated ~~April~~ *May*          , 2009, between 3301 Atlantic
Avenue LLC.                              ("Lessor"), and Xxxxxxxxxx.
*EM—ESS Acquisition LLC*          ("Lessee").

### 1.   The Demised Premises and Lease Term

In consideration of the Rent hereinafter reserved and
the terms, covenants and conditions set forth in this Lease to be
observed and performed by Lessee, Lessor hereby demises and leases
to Lessee, and Lessee hereby rents and takes from Lessor, the
following property (collectively hereinafter referred to as the
"Demised Premises"):   (a) all the land (the "Land") described in
Exhibit A hereto and designated as Block 4143 Lot 1, also known as
3301 Atlantic Avenue;   (b) all buildings, structures and other
improvements (the "Improvements") now or hereafter located on the
Land, other than Lessee's Equipment as hereinafter defined;   and
(c) all rights of way or use, servitudes, licenses, tenements,
appurtenances and easements now or hereafter belonging or
pertaining to any of the foregoing;   **TO HAVE AND TO HOLD** the
Demised Premises unto Lessee, and the permitted successors and
assigns of Lessee, upon and subject to all of the terms, covenants
and conditions herein contained, for a term (the "Lease Term") of
*Five (5)* ~~Ten (10)~~ years, commencing on ~~▮▮▮~~ *June 1*, 2009 and expiring on
*May 31, 2014* ~~March 31, 2019~~, unless the Lease Term shall sooner terminate
pursuant to any of the conditional limitations or other provisions
of this Lease.

### 2.   Rent

Lessee covenants to pay to Lessor as a net minimum rent
(the "Fixed Rent") during the Lease Term as described:
*(a) No fixed rent during first year; (b) 125,000 per month*
~~$90,000.00 per month for the first two years with a three~~
~~(3%) percent increases every two years thereafter,~~ *130,000*
*for the second, third and fourth years; and (c) ▮▮▮ per month during the fifth*
The Fixed Rent shall be payable in advance in equal *year*
monthly installments on the first day of each calendar month.
Together with one-twelfth (1/12) of that part of impositions
consisting of real estates taxes.   If the Lease Term does not
commence on the first day of a month, the Fixed Rent for the month
in which the Lease Term commences shall be appropriately
apportioned.   Each date on which Fixed Rent is payable hereunder
is hereinafter referred to as a "Rent Payment Date".

Lessee also covenants to pay, from time to time as pro-
vided in this Lease, as Additional Rent:   all other amounts and
obligations which Lessee assumes or agrees to pay under this
Lease;   interest at the rate of twelve percent per annum on such
of the foregoing amounts and obligations as are payable to Lessor

and are not paid within ten days after the due date (or, if a demand therefor is required by the terms of this Lease, within ten days after such demand), from the due date or such demand, as the case may be, until the payment thereof;   a late payment charge equal to  0%  percent of the amount of any installment of Fixed Rent not paid within five business days after the date when due; and interest at the rate of ~~twelve~~ percent per annum on all installments of Fixed Rent not paid on the due date, from the due date until paid.   If Lessee fails to pay any such Additional Rent, Lessor shall have all the rights, powers and remedies provided for in this Lease or at law or in equity or otherwise in the case of nonpayment of rent.

All Fixed Rent and Additional Rent (collectively hereinafter referred to as "Rent") shall be paid in such coin or currency (or, subject to collection, by good check payable in such coin or currency) of the United States of America as at the time shall be legal tender for the payment of public and private debts, at the office of Lessor as set forth above, or at such place and to such person as Lessor from time to time may designate.

### 3.   No Counterclaim or Abatement

All Rent shall be absolutely net to Lessor so that this Lease shall yield to Lessor the full amount of the installments thereof throughout the Lease Term without deduction.    All Rent shall be paid to Lessor without counterclaim, setoff, deduction or defense, and nothing shall suspend, defer, diminish, abate or reduce any Rent, except as otherwise specifically provided in this Lease.    Any demand for additional rent shall be given by ten (10) days written notice to Lessee.

The obligations and liabilities of Lessee hereunder in no way shall be released, discharged or otherwise affected (except as expressly provided herein) by reason of:   any damage to or destruction of or any Taking of the Demised Premises or any part thereof;   any restriction or prevention of or interference with any use of the Demised Premises or any part thereof;   any title defect or encumbrance or any eviction from the Demised Premises or any part thereof by title paramount without fault of tenant;   any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Lessor, or any action taken with respect to this Lease by any trustee or receiver of Lessor, or by any court, in any such proceeding;   any claim which Lessee has or might have against Lessor;   any failure on the part of Lessor to comply with or perform any of the terms hereof except that prevent occupancy by

2

tenant or of any other agreement with Lessee;  or any other
occurrence whatsoever, whether similar or dissimilar to the
foregoing, whether or not Lessee shall have notice or knowledge of
any of the foregoing.  Except as expressly provided herein, Lessee
waives all rights now or hereafter conferred by statute or
otherwise to quit, terminate or surrender this Lease or the
Demised Premises or any part thereof, or to receive any abatement,
suspension, deferment, diminution or reduction of any Rent payable
by Lessee hereunder.

### 4.  Use of Demised Premises

Lessee covenants that the Demised Premises shall be
used solely for factory for food manufacturing and distribution,
unless approved in writing by Lessor, *with Lessor's consent not to be
unreasonably withheld.*
Lessee shall not do or permit any act or thing which is
contrary to any Legal Requirements or Insurance Requirements, or
which might impair the value or usefulness of the Demised Premises
or any part thereof.  Lessee shall not use, or allow the Demised
Premises or any part thereof or any Improvements now or hereafter
erected thereon or any appurtenances thereto to be used or occu-
pied, for any unlawful purpose or in violation of any certificate
of occupancy, and shall not suffer any act to be done or any
condition to exist within the Demised Premises or any part
thereof, or in any Improvements now or hereafter erected thereon,
or on any appurtenance to the Demised Premises, or permit any
article to be brought therein, which may be dangerous, unless
safeguarded as required by law, or which may constitute a
nuisance, public or private, or which may make void or voidable
any insurance in force with respect thereto.

Lessee shall not do or suffer any waste, damage, dis-
figurement or injury to the Demised Premises.

Lessee shall not permit the spilling, discharge,
release, deposit or placement on the Demised Premises or any part
thereof, whether in containers or other impoundments, of any
substance which is a hazardous or toxic substance within the
meaning of any applicable environmental law.

3

## 5.  Condition of Demised Premises

Lessee represents that Lessee has examined and is fully familiar with the physical condition of the Demised Premises, the Improvements thereon including the sidewalks.  Lessee accepts the same, without recourse to Lessor, in the condition and state in which they now are, and agrees that the Demised Premises complies in all respects with all requirements of this Lease.  Lessor makes no representation or warranty, express or implied in fact or by law, as to the nature or condition of the Demised Premises, or its fitness or availability for any particular use, or the income from or expenses of operation of the Demised Premises.  Lessor shall not be liable for any latent or patent defect therein.

## 6.  Maintenance and Repair

Lessee, at all times during the Lease Term and at Lessee's expense, shall keep the Demised Premises, and all Improvements now or hereafter located thereon, and all facilities and equipment thereon, and the adjoining sidewalks, curbs, vaults and vault space, if any, streets and ways, and all appurtenances to the Demised Premises, in a clean order and condition and in such condition as may be required by all Legal Requirements and Insurance Requirements, and promptly shall make all necessary or appropriate repairs, replacements and renewals thereof, whether interior or exterior, nonstructural only, ordinary or extraordinary, or foreseen or unforeseen.  All repairs, replacements and renewals shall be of a quality nature.  Lessee waives any right created by any law now or hereafter in force to make repairs to the Demised Premises at Lessor's expense, except as a result of Lessor's actions. Notwithstanding the foregoing, Lessee shall not be responsible for any structural repairs ~~~~~~~~~~~~~~~ of the

Lessee, at Lessee's expense, shall do or cause others to do every act necessary or appropriate for the preservation and safety of the Demised Premises by reason of or in connection with any excavation or other building operation upon the Demised Premises or any adjoining property, including without limitation all shoring of foundations and walls of the Improvements or of the ground adjacent thereto, whether or not the owner of the Demised Premises shall be required by any Legal Requirement to take such action or shall be liable for failure to do so.

Roof, or any plumbing, electrical, mechanical, and HVAC systems

4

*Such consent
not to be
unreasonably withheld*

### 7.  Alterations and Additions

If not at the time in default under this Lease, Lessee at Lessee's expense may make reasonable alterations of and additions to the Demised Premises, provided that any alteration or addition:  shall not change the general character of the Demised Premises, or reduce the fair market value thereof below its value immediately before such alteration or addition, or impair the usefulness of the Demised Premises;  is effected with due diligence, in a good and workmanlike manner and in compliance with all Legal Requirements and Insurance Requirements;  is promptly and fully paid for by Lessee;  and is made, in case the estimated cost of such alteration or addition exceeds $25,000.00 and requires building department approval, only after Lessee shall have obtained Lessor's prior written consent thereto and under the supervision of an architect or engineer satisfactory to Lessor and in accordance with plans, specifications and cost estimates approved by Lessor, and only after Lessee shall have furnished to Lessor, if requested, waivers of mechanics' and materialmen's liens from all persons furnishing material or labor and a performance bond or other security satisfactory to Lessor assuring Lessor of the completion of such alteration or addition and payment in full of the cost thereof.

The title to all additions, repairs and replacements to any Improvements made during the Lease Term and any renewal thereof, forthwith shall vest in Lessor, and said Improvements, additions, repairs and replacements shall be and become the sole and absolute property of Lessor, without any obligation of payment by Lessor therefor, at the end of the demised term by expiration or otherwise.