Davidoff Malito & Hutcher LLP
Ralph E. Preite, Esq.
Counsel for CHLOE FOODS CORP.
605 Third Avenue
New York, New York 10158
(212) 557-7200

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re								Chapter 11

CHLOE FOODS CORP.,					Case No. 08-48650-CEC

					Debtor.

---------------------------------------------------------x

**MOTION TO APPROVE PROPOSED STIPULATION AND ORDER
AUTHORIZING COMPROMISE OF CONTROVERSY PURSUANT TO
RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
INCLUDING DISTRIBUTION OF ESTATE FUNDS PURSUANT TO CARVE-
OUT BY SECURED CREDITORS**

TO:	HONORABLE CARLA E. CRAIG,
	CHIEF UNITED STATES BANKRUPTCY JUDGE:

Chloe Foods Corp., debtor and debtor in possession ("Debtor"), by its counsel, Davidoff Malito & Hutcher LLP, as and for its motion seeking approval, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, of the annexed **STIPULATION AND ORDER AUTHORIZING COMPROMISE OF CONTROVERSY PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE INCLUDING DISTRIBUTION OF ESTATE FUNDS PURSUANT TO CARVE-OUT BY SECURED CREDITORS** (the "Stipulation"), represents to this Honorable Court as follows:

1. This Motion seeks approval by the Court of a proposed stipulation of settlement dated

December 31, 2009 on the grounds that the proposed compromise is in the best interests of the Debtor's estate and its creditors.

## I. **INTRODUCTION**

2. The parties to the proposed settlement are: Chloe Foods Corp., debtor, Amerivon Chloe Acquisition LLC ("Amerivon"), Cross Island Plaza Inc. ("CIP), BCS Financial LLC, as successor to Sanderson State Bank ("BCS") (Amerivon, CIP and BCS shall collectively be referred to as the "Secured Creditors"); Davidoff Malito & Hutcher LLLP, the Official Committee of Unsecured Creditors, its counsel, Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow LLP (Creditors' Committee Counsel), CBIZ Accounting Tax & Advisory of New York, LLC (Creditors' Committee Accountants) collectively referred to as the "Administrative Professionals"), Local 348-S, United Food & Commercial Workers ("Local 348-S") Local 348 Health & Welfare Fund ("348 Welfare Fund") and Local 348 Annuity Fund ("348 Annuity Fund"), Local 807 I.B.T. ("Local 807") and the Local 807 Profit Sharing Fund ("807 Profit Sharing Fund") and the United Teamsters Fund ("Teamsters Fund") hereinafter collectively referred to as the "Creditors".

3. The various alleged claims which are to be settled pursuant to the proposed stipulation of settlement concern the validity of certain alleged security interests, alleged claims for recovery of certain payments made, alleged misrepresentations, among other things. As a result of the proposed stipulation of settlement, estate funds will be released to the Secured Creditors the Administrative Professionals, the various unions and their funds, and the employees' wages from January 2009.

4. A copy of the Stipulation is annexed hereto as Exhibit "A".

5. In sum, the aforesaid claims shall be resolved by dividing the funds on deposit in

escrow among the various parties, 55/45 (secured creditors / unions, wages and professional fees). Each group shall share the funds pro-rata.

6. The terms of the agreement, and the basis upon which the parties seek its approval, are more particularly described below, and in the annexed Stipulation.

## II. BACKGROUND

7. On December 19, 2008, (the "Filing Date"), the Debtor, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), and remained in possession of its assets.

8. Substantially all of the Debtor's assets were sold at auction on May 22, 2009 in accordance with section 363 of the Bankruptcy Code for the sum of $3,000,000.00, and a closing thereon was held May 24, 2009.

9. From the $3,000,000.00 sales proceeds, the following $2,011,550.00 in payments were made by Order of the Court:

| AMOUNT | DISTRIBUTION TO PACA AND LAND LORD CURE |
|---:|---|
| 30,698.00 | Paris Foods, Corporation |
| 452,852.00 | Farm Fresh, Inc. |
| 300,000.00 | Wells Fargo Bank, NA, |
| 1,158,000.00 | Bonell Produce, Inc., d/b/a Dublin Produce Co. |
| 70,000.00 | Steve Malatesta Imports Inc. |
| 2,011,550.00 | Total |

thereby leaving approximately **$995,896.52** in escrow with Debtor's counsel, Davidoff Malito & Hutcher LLP ("DMH"), including interest and other deposits ("**Escrow Funds**").

10. The Debtor expects to receive approximately $1.7 million in NYS Empire Zone Tax refunds ("Tax Refunds"), of which net approximately $929,548.10 is expected to be available to the Estate ("Net Tax Refunds").

11. From the $995,896.52 proceeds being held in escrow by DMH, the following

$45,669.50 in future payments ("Future Payments") needed to be made:

| FUNDS REQUIRED FOR FUTURE PAYMENTS | |
|---|---:|
| Anchin Economic Development LLC | 20,000.00 |
| LCK | 5,000.00 |
| AICCO Escrow | 8,519.50 |
| US Trustee 3Q09 | 975.00 |
| US Trustee 4Q09 (if settled) | 4,875.00 |
| US Trustee 1Q10 | 650.00 |
| US Trustee 2Q10 | 650.00 |
| Other Misc expenses. | 5,000.00 |
| Total: | 45,669.50 |

thereby leaving the sum of $950,000.00 available in The Escrow Funds to distribute to creditor.

12. Amerivon Chloe Acquisition LLC ("Amerivon"), Cross Island Plaza Inc. ("CIP), BCS Financial LLC, as successor to Sanderson State Bank ("BCS") (Amerivon, CIP and BCS shall collectively be referred to as the "Secured Creditors") assert alleged liens against the net sale proceeds with such alleged liens collectively exceeding $10,000,000.00.

13. The Secured Creditors assert a security interest in the Tax Refunds. However, the Debtor and the Official Committee of Unsecured Creditors, and each of them, have asserted certain defenses to the alleged claims of the Secured Creditors, and additionally, have asserted claims against some of the Secured Creditors. While the defenses are factually supported, there is a real possibility that the defenses might not be sustained by the Court, after review.

14. In essence, the settlement amounts to a carve-out of the Secured Creditors' collateral by their consenting to a distribution of 45% of their collateral, consisting of the $995,896.52 in Escrow Funds. Such funds shall be evenly shared pro-rata by the Administrative Professionals, the employees for wages from January 2009, and the two unions and various funds of each union. This first distribution would provide a distribution to these creditors of approximately 35% of their claims.

15. Additionally, the settlement amounts to a further carve-out of the Secured Creditors'

collateral by their consenting to a distribution of 45% of their collateral, consisting of the approximately $929,548.10 in Net Tax Refunds (referenced in para. 10 above) which the Debtor is hopeful in collecting from the State of New York. This second distribution (if all the tax refunds are collected) would provide a payment to these creditors of approximately 34% of their claims, again, if all the tax refunds are paid by the State of New York. Therefore, this settlement has the potential of paying **69%** of the wage, union and professional fees to creditors.

| PROFESSIONAL FEES, WAGES & UNION | AMOUNT |
|---|---|
| Davidoff Malito & Hutcher | 510,000.00 |
| Platzer, Swergold, Karlin, | 150,000.00 |
| CBIZ Accounting Tax & Advisory etc. | 150,000.00 |
| Local 348-S Dues | 13,000.00 |
| Local 348 Annuity Fund | 10,610.00 |
| Local 348 Welfare Fund | 66,610.00 |
| Local 807 Profit Sharing Fund | 18,882.67 |
| Local 807 dues | 4,191.42 |
| Teamsters Fund | 24,750.00 |
| Non-Union wages 1st week | 72,753.46 |
| Union 807 wages 1st week | 16,677.06 |
| Union 348 wages 1st week | 60,364.47 |
| Non-Union wages 2nd week | 71,043.50 |
| Union 807 wages 2nd week | 12,072.53 |
| Union 348 wages 2nd week | 46,844.30 |
| Total: | 1,227,799.41 |

16. After evaluating the strengths and weaknesses of the parties' claims, by reviewing the relevant evidence and applicable legal principles, the Debtor and the creditors committee and the Secured Creditors have concluded that it is in the parties' and the Estate's best interests to resolve the claims set forth herein, subject to Court approval.

### III. APPLICABLE LEGAL STANDARD FOR APPROVING SETTLEMENT OFFERS

17. It is a well-established principle that settlements are favored over continued litigation. In re Blair, 538 F. 2d 849, 851 (9th Cir. 1976); In re Heissenger Resources, Ltd., 67 Bankr. 378,

382 (Bankr. C.D. Il. 1986). Moreover, courts particularly favor settlements in liquidating bankruptcies due to the paramount goal of rapidly liquidating the bankruptcy estate's assets. Blair, at 952; Heissenger, at 381.

18. Bankruptcy courts follow a four-part test for evaluating and approving a proposed settlement of a bankruptcy estate's claim. The test was enunciated by the Supreme Court in Protective Committee for Ind. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed. 2d 1 (1968).

19. In TMT Trailer, the Supreme Court mandated that a bankruptcy court should appraise itself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. 390 U.S. at 424, 88 S.Ct. at 1163-64, 20 L.Ed.2d at 9-10. From the TMT Trailer standard, the following four-part test has emerged in evaluating proposed settlements of a bankruptcy estate's claim:

- the probability of success in prosecuting the litigation instead of settling;

- the difficulties, if any, associated with collection of a judgment;

- the complexity of the subject litigation and the expense, inconvenience and delay necessarily attending it; and

- the paramount interests of creditors and a proper deference to their reasonable views in the premises.

See In re Jackson Brewing Co., 624 F.2d 605, 607 (5th Cir. 1980); Drexel Burnham Lambert, Inc. v. Flight Trans. Corp., (In re Flight Trans., Corp. Securities Litigation), 730 F.2d 1128 (8th Cir. 1984), cert. denied sub nom, Reavis & McGrath v. Antionre, 496 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985). See also, Collier on Bankruptcy, ¶ 9019.02, 15th Ed. Revised (1997).

20. In addition to the foregoing four elements, courts within the Second Circuit have discussed the following two factors:

- the nature and breadth of releases to be used as a result of the settlement; and

- the proposed settlement must be the product of arms-length bargaining and not the product of fraud or collusion.

In re Texaco, Inc., 84 B.R. 93, 901 (Bankr. S.D.N.Y.), appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988); In re Best Products, Co., Inc., 165 B.R. 35 (Bankr. S.D.N.Y.), appeal dismissed, 177 B.R. 791 (S.D.N.Y.), affirmed, 68 F.3d 26 (1994); In re Fugazy, 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993).

21. In other words, a compromise will be approved by the court when it is both fair and equitable and in the best interests of the bankruptcy estate. TMT Trailer, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1; Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mfg. Corp.), 68 F.3d 914, 917 (5th Cir. 1995).

22. Ultimately, the obligation of the Court in evaluating a proposed settlement is to "canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness'". In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 505 (Bankr. S.D.N.Y. 1991), quoting In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir.), cert. den. sub nom. 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

23. An analysis of the proposed settlement offer under the aforesaid factors demonstrates that it is reasonable and satisfies the factors.

### A. Probability Of Success In Prosecuting The Litigation Instead Of Settling

24. The Creditors Committee and the Debtor dispute the security interest that the Secured Creditors assert.

25. While security interests might have been granted at the inception of the subject loans, certain transfers seem to have occurred without full credit for the security interests being

accounted for.

26. If the claims asserted by the Committee and the Debtor were litigated, the parties will face defenses based upon the following factual assertions:

- Security interests were indeed granted.
- Transfers of the loan were from pre-existing bona-fide financial institutions.
- Consideration was given for the transfer of the subject loans and security interests.

27. Notwithstanding the asserted factual assertions, it can be discerned from the proposed settlement offer that the Secured Creditors believe that their interests may be sufficiently suspect to warrant making the offer to split the collaeral 45/55. The offer is not an insignificant amount, and represents more than a payment for nuisance value.

28. The Secured Creditors' offer of splitting the collateral will bring a meaningful distribution to the subject administration claimants.

29. Accordingly, after considering the possible defenses and the relative strengths of the parties' positions, it appears that litigating the claims and the defenses may not result in a decision favorable to the Debtor's bankruptcy estate on all counts, or such decision will come at a significant expense to the estate.

30. Therefore, settlement as provided in the Stipulation is in order and the Stipulation should be approved.

      **B.    The Difficulties Associated
            With Collecting a Judgment**

31. There is an issue of the matter at bar concerning the possibility of collecting a judgment rendered in this adversary proceeding if one is rendered in favor of the Debtor and the estate.

32. One of the secured Creditors, and a possible defendant, is a special purpose

corporation created for the purposes of financing the Debtor back in 2007. Upon information and belief, it has no assets, and a judgment against it would be difficult to collect.

33. The same is true with respect to the commercial bank entity, Sanderson State Bank, which is defunct and taken over by the FDIC..

34. Therefore, the risk associated with collecting on a judgment in favor of the Trustee on avoiding the conveyance is eliminated if the proposed settlement is approved.

    **C.    The Complexity Of The Subject Litigation And The Expense, Inconvenience And <u>Delay Necessarily Attending It</u>**

35. As has been addressed above, the issues raised in the possible defenses and claims against the Secured Creditors are fairly complex, both legally and factually, involving issues of both New York State law, and various assignments of pre-existing claims.

36. Inconvenience and delay at this juncture are also issues as the estate is fixed in size, and dwindles with each dollar in professional fess that are charged against the estate.

37. Additionally, the first of the 2-part partial distribution to employees for the wages they earned in January 2009, but which were not been paid, can take place if the stipulation is approved, thereby providing a meaningful payment (approximately 35%) in the immediate future significant if approved weighs in favor of approving the proposed settlement.

    **D.    <u>The Paramount Interest of Creditors</u>**

38. The paramount interests of creditors test is satisfied in approving the Stipulation, as the Estate will receive funds which will become available to administration creditors in the form of a 35% distribution on their claims today, and possibly another 34% distribution in the near future as tax refunds are hopefully collected.

39. Additionally, legal fees will no longer accrue and will no longer consume the fixed

estate that is available in this matter.

40. The additional factors Courts within the Second Circuit analyze in reviewing compromises are discussed below.

### E. The Nature And Breadth Of Releases To Be Used As A Result Of The Settlement

41. Analysis of this factor neither weighs in favor weighs in favor of approving the proposed Stipulation. The proposed Settlement resolves claims against the estate, but does not specifically compromise rights against third parties.

42. Accordingly, certain claims involving third parties (i.e., shareholders, guarantors, etc.) are not specifically waived thereby providing creditors with possible alternate sources of collection other than the Estate.

### F. The Proposed Settlement Must Be the Product Of Arms-Length Bargaining And Not the Product Of Fraud Or Collusion

43. The next factor in this analysis is whether the proposed settlement is the product of an arms-length negotiation and not the product of fraud or collusion.

44. The parties to this stipulation have been sent to mediation, which occurred before another member of the Bankruptcy Court judiciary in this District.

45. The parties have vigorously negotiated their respective positions, not easily conceding on any issue, thereby causing negotiations to continue to the final hour.

46. Accordingly, all terms of this proposed stipulation were made at protracted, (at times, appearing to never end) arms-length negotiations.

47. More over, all parties, which include a host of divergent positions (unions, employees, professionals, and secured creditors) are conceding claims, and taking painful "hair

cuts" in arriving at the proposed stipulation, which further demonstrates the existence of arms-length negotiations, and the lack of collusion.

## IV. **NOTICE**

48. Notice of this Application and the Stipulation has been transmitted to all creditors and parties who have filed notices of appearance.

## V. **CONCLUSION**

49. The factors which Courts in this Circuit must analyze in determining whether to approve settlement offers demonstrate that the settlement offer embodied in the Stipulation should be approved.

50. Analysis of the appropriate factors weighs in favor of approving the Stipulation.

Wherefore, for all of the foregoing reasons, the Debtor and the parties to this proposed settlement agreement respectfully request that the annexed Stipulation be entered approving the settlement reached between the parties, and for such other and further relief as the Court finds is just and proper, for all of which no prior request has been made to this or any other Court.

Dated: New York, New York
December 31, 2009

                                       Davidoff Malito & Hutcher, LLP
                                       Attorneys for Chloe Foods Corp., Debtor and
                                       Debtor in Possession.

                                       By: _____
                                          Ralph E. Preite (RP:6700)
                                     605 Third Avenue
                                     New York, New York 10158
                                     (212) 557-7200 x 3237