UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re

CHLOE FOODS CORP.,
d/b/a Chloe Foods Manufacturing

                Debtor.

-----------------------------------------------------------x

Return Date:
January 20, 2010
at 3:00 P.M.

Chapter 11

Case No. 108-48650-CEC

### OPPOSITION OF EM-ESS TO CHESTNUT REALTY'S MOTION RELATING TO OCCUPANCY OF AN EMPLOYEE PARKING LOT

EM-ESS Acquisition LLC ("EM-ESS") as and for its Opposition to the motion of Chestnut Realty Group LLV ("Chestnut Realty") relating to occupancy of an employee parking lot, represents and shows this Court as follows:

### OVERVIEW

1. Perhaps lost in the translation is that the instant motion involves a dispute among two non-debtors, Chestnut Realty and EM-ESS, and the real estate debtor, 3301 Atlantic Avenue LLC ("3301 Atlantic"), over rights to an employee parking lot directly across the street from the former Chloe/Blue Ridge Farms main operating plant. This parking lot straddles three different tax lots identified as follows: Block 4141, Lots 30, 33 and 39.

2. As part of the sale, Chloe Foods' affiliate, 3301 Atlantic, entered into a superceding and replacement lease (the "Lease") with EM-ESS

which included access to the <u>entire</u> employee parking lot. In the months following the sale, Chestnut Realty, as the successor to other property purchased from 3301 Atlantic, has alleged that EM-ESS has no rights to the parking lot beyond Lot 30. EM-ESS has disputed this contention and notes that the employee parking lot is an open area, unbounded, and was specifically referred to in the Lease by a diagram prepared at closing for clarification purposes. This diagram refers to the parking lot in its entirety without differentiation as between various lots. A copy of the diagram is attached hereto as <u>Exhibit "A"</u>.

   3. EM-ESS is validly occupying the entire employee parking lot based upon the diagram which is the controlling document. Accordingly, the motion should be denied, particularly since Chestnut Realty makes no mention of the diagram in its supporting papers and closes its eyes to the fact that 3301 Atlantic previously agreed to provide EM-ESS with unfettered access to the employee parking lot.

## THE EMPLOYEE PARKING LOT

   4. The employee parking lot consists of approximately 17,250 square feet, of which approximately 6,000 square feet are included as part of Lots 33 and 39. Lots 33 and 39 themselves, however, stretch beyond the parking lot and includes other areas and structures.

5.   EM-ESS' access to the parking lot was fully referenced in the preamble of the sale order, which provides in relevant part:

> "... enter in to a new lease with 3301 Atlantic Avenue LLC ("3301"), with the approval of 3301's mortgagee, Wells Fargo Bank, NA, as Trustee for the Registered Holders of Wachovia Bank Commercial Trust ("Wells Fargo"), covering the entire operating plant and perking (sic) across the street, commonly known as 3301 Atlantic Avenue, Brooklyn, NY (excluding 3301's property known as Section 13, Block 4142, Lot 1, and Block 4141, Lots 1, 33, 35 and 39, including any buildings and improvements, appurtenances, fixtures, equipment and any other personal property appurtenant to any buildings thereto), ... ."

6.   The proviso excluding certain other lots can be read in harmony with the diagram, as this exclusionary language confirms that the other structures on these lots (including the maintenance building) was not part of the main operating plant acquired by EM-ESS. Nevertheless, as the diagram makes clear, EM-ESS did not acquire the maintenance facility on Lots 33 and 39, but it did acquire the operating plant and the parking lot across the street.

7.   To the extent that there is any ambiguity, we should look to the specific declaration of the parties' intent as manifested by the diagram. Moreover, any doubt must be resolved against Chestnut Realty which acquired its interest after the sale of the operating plant and ensuing leasing of the parking lot to EM-ESS was completed. As such, Chestnut Realty had ample opportunity to see first hand EM-ESS' occupancy of the entire parking lot.

8.	From an economic perspective, the dispute over 6,000 square feet involves a fair market rent of approximately $3,000 per month. Given the relatively nominal amounts involved, the matter can be potentially resolved through an adjustment and reduction in EM-ESS' base rent due under the Lease once its current abatement ends, and a corresponding payment of $3,000 per month to Chestnut Realty.

WHEREFORE, for the reasons set forth herein, the motion of Chestnut Realty as it seeks control to EM-ESS' occupancy of the entire parking lot should be denied, together with such other and further relief as is proper.

Dated: New York, New York
       January 18, 2010

>                     GOLDBERG WEPRIN
>                     FINKEL GOLDSTEIN LLP
>                     Counsel for EM-ESS
>                     1501 Broadway, 22nd Floor
>                     New York, New York 10036
>                     (212) 221-5700
>
>                     By: _____
>                          KEVIN J. NASH, ESQ.
>                          A Member of the Firm

TO:  Arthur M. Laske, Esq.
     Law Offices of Arthur Laske
     Attorneys for Chestnut Realty Group, LLC
     65-06 Grand Avenue
     Maspeth, New York 11378

     Sanford P. Rosen & Associates P.C.
     Attorneys for 3301 Atlantic Avenue
     743 – 3rd Avenue, 20th Floor
     New York, New York 10017-2803

Ralph Preite, Esq.
Davidoff Malito & Hutcher LLP
Attorneys for Chloe Foods Corp.
605 Third Avenue
New York, New York 10158

McCarter & English
Attorneys for Wells Fargo Bank
4 Gateway Center
100 Mulberry St.
Newark, New Jersey 07102

EXHIBIT "A"

